IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| I HEART ATLANTA, LLC, | ) | |
| a Georgia Limited Liability Company, | ) | CIVIL ACTION NO. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NORTH GEORGIA PROPERTY | ) | |
| SERVICES, INC., a Georgia Corporation; | ) | |
| JACOB CALVERT, an individual; and | ) | |
| DEANA CALVERT, a individual, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff I Heart Atlanta, LLC ("I Heart Atlanta"), for its Complaint against defendants North Georgia Property Services, Inc., Jacob Calvert, and Deana Calvert (collectively, "Defendants"), states as follows:

## NATURE OF THE ACTION AND RELIEF SOUGHT

1.     I Heart Atlanta, LLC is an award-winning Keller Williams Signature Partners real estate group consisting of the husband-and-wife team Lisa and David Simpson, who buy and sell homes in Atlanta, Georgia and surrounding areas.

122004185

2.    I Heart Atlanta owns common law trademark rights for, *inter alia*, residential real estate services in the design mark , which consists of a design of the state of Georgia in red and a white heart depicted in the top portion of the design (the "I Heart Atlanta Mark").  I Heart Atlanta also owns U.S. Trademark



Application Serial Nos. 97087009, 97114297, and 97105609 for the I Heart Atlanta Mark in connection with residential real estate services, jewelry and key chains, and promotional materials, respectively.  I Heart Atlanta first started using the I Heart Atlanta Mark in January 2017.  Through its extensive and continuous use, I Heart Atlanta also owns common law rights in the I Heart Atlanta Mark. The above show illustrative examples of the I Heart Atlanta Mark as used in commerce.

3.    Years after I Heart Atlanta first began using in commerce and acquired exclusive trademark rights in the I Heart Atlanta Mark, Jacob and Deana Calvert, who work for Keller Williams Realty, Inc., began using the confusingly

122004185



similar design mark            which consists of a design of the state of Georgia

in red and a key depicted in the top portion of the design for residential real estate

services (the "Calvert Mark").

4.    The confusing similarity between Plaintiff's I Heart Atlanta Mark (on

the left below) and the virtually identical Calvert Mark that Defendants are using

(on the right below), is clear:

**<u>I Heart Atlanta Mark</u>**            **<u>Calvert Mark</u>**



5.    Defendants' trademark infringement, unfair competition, and

deceptive trade practices with respect to the I Heart Atlanta Mark is beyond

question.   Defendants' Calvert Mark as used for identical services already has

caused confusion in the marketplace. Because Defendants refuse to cease use of

the Calvert Mark in response to I Heart Atlanta's numerous requests, and because I

Heart Atlanta is aware of several instances of actual confusion between the marks

even though it was only recently adopted and used, I Heart Atlanta is forced to

bring this lawsuit.

6.     This Complaint asserts civil claims for federal unfair competition and false designation of origin in violation of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a) (Count I); for trademark infringement and unfair competition under the common law of Georgia (Count II); and for violation of Georgia's Deceptive Trade Practices Act, O.C.G.A. § 10-1-370 *et seq.* (Count III).

7.     I Heart Atlanta brings this action to obtain injunctive relief to stop Defendants' infringement, unfair competition, and deceptive trade practices arising from their unauthorized and unlawful use of I Heart Atlanta's Mark; recompense for all actual damages sustained by I Heart Atlanta and a disgorgement of Defendants' ill-gotten profits; and an award of I Heart Atlanta's reasonable attorney's fees, costs, and pre-judgment and post-judgment interest, as a result of Defendants' unlawful actions.

## PARTIES, JURISDICTION AND VENUE

8.     I Heart Atlanta, LLC is a Georgia limited liability company with a principal place of business at 3375 Dallas Hwy #100, Marietta, Georgia 30064.

9.     Jacob Calvert and Deana Calvert (the "Calverts") are individuals residing at 2 Quail Hollow SE, Rome, Georgia 30161.  Service may be made upon the Calverts at their residence.

122004185

10.     North Georgia Property Services, Inc. is a Georgia corporation with a principal place of business at 2 Quail Hollow SE, Rome, Georgia 30161. Service may be made upon North Georgia Property Services, Inc. through its registered agent Deana Calvert at its principal place of business.

11.     According to the Georgia business registration, Jacob Calvert is CEO and Deana Calvert is CFO and Secretary of North Georgia Property Services, Inc.

12.     This Court has original jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a) and (b) as it involves claims presenting a federal question of trademark infringement joined with a substantial and related claim of unfair competition, and under 15 U.S.C. § 1121(a) (actions arising under the Lanham Act have original jurisdiction in federal courts).

13.     This Court also has supplemental jurisdiction over the state statutory and common law claims for trademark infringement, unfair competition, and deceptive trade practices under 28 U.S.C. §§ 1338(b) and 1367(a) because these claims are so related to the claims under which the Court has original jurisdiction that they form part of the same case and controversy under Article III of the United States Constitution.

14.     This Court has personal jurisdiction over Defendants Jacob Calvert, Deana Calvert, and North Georgia Property Services, Inc. because, respectively, (i)

122004185

the Calverts are residents of Georgia and North Georgia Property Services, Inc. is a Georgia corporation with its principal place of business is located in Georgia and this judicial District, (ii) Defendants, individually and collectively, regularly transact and conduct business, have established contacts, and have committed trademark infringement, unfair competition, deceptive trade practices, and other tortious acts in Georgia and this District, and (iii) a substantial part of the events giving rise to the claims asserted in this Complaint occurred in Georgia and this District.

15.    Venue is proper as to Defendants in this District and its Rome Division pursuant to the provisions of 28 U.S.C. § 1391(b)(1)-(2), (c)(2), and (d) because the Calverts reside in, and the North Georgia Property Services, Inc.'s principal place of business is in, this District and Division insofar as Defendants are subject to personal jurisdiction here, a substantial part of events giving rise to the claims asserted in this Complaint occurred in this District and Division, and Defendants have transacted business and committed acts of trademark infringement, unfair competition, and deceptive trade practices in this District and Division.

122004185

## FACTS COMMON TO ALL COUNTS

### I Heart Atlanta, LLC's I Heart Atlanta Mark

16.     Plaintiff I Heart Atlanta is an award-winning Keller Williams Signature Partners residential real estate group consisting of the husband-and-wife team Lisa and David Simpson, who assist their clients when they buy and sell homes in Atlanta, Georgia and surrounding areas and whose clients come from all over the United States.

17.     I Heart Atlanta's promotion of its real estate services and home sales under the I Heart Atlanta Mark result in substantial business.

18.     I Heart Atlanta owns nationwide common law trademark priority rights in the I Heart Atlanta Mark based on their prior continuous, uninterrupted, and extensive bona fide actual use of those trademarks and service marks in interstate commerce to promote I Heart Atlanta's residential real estate services since at least as early as January 1, 2017.

19.     I Heart Atlanta also owns U.S. Trademark Application Serial Nos. 97087009, 97114297, and 97105609 for the I Heart Atlanta Mark for its residential real estate services and ancillary promotional products. Printouts of the status

7

sheets for these applications from the PTO's Trademark Status & Document Retrieval system are attached to this Complaint as **Exhibit A**.

20.     The I Heart Atlanta Mark, , consists of a depiction of the state of Georgia in red with a white heart depicted in the top portion of the design.

21.     I Heart Atlanta has promoted its I Heart Atlanta Mark extensively on signage and through email marketing and social media such as Instagram and Facebook. Lisa Simpson, a principal at I Heart Atlanta, has been interviewed in publications such as *Shoutout Atlanta* and *VoyageATL*.

22.     I Heart Atlanta owners Lisa and David Simpson have won numerous awards for sales of homes in Georgia under the I Heart Atlanta Mark and are currently ranked the number one team from Keller Williams for home sales in Atlanta and the number two team for Keller Williams for home sales in the entire state of Georgia. Lisa and David have been on the cover twice of *Top Agent Magazine* highlighting the success they have enjoyed using their I Heart Atlanta Mark.

23.     I Heart Atlanta has invested a substantial amount of time, money, and other resources in promoting its I Heart Atlanta Mark in this state and around the United States.

122004185

24.     The public and residential real estate industry have come to rely on the I Heart Atlanta Mark to distinguish I Heart Atlanta's residential real estate services from those of others.

25.     I Heart Atlanta's Mark represents a valuable asset owned by I Heart Atlanta and an important means for clients and potential clients to distinguish its real estate services from the services of others.

## Defendants' Unlawful Activities

26.     Defendant North Georgia Property Services, Inc. is a residential real estate group consisting of Defendants Jacob and Deana Calvert, a husband-and-wife team, who work for Keller Williams Realty, Inc. buying and selling homes on behalf of clients.

27.     Over four years after I Heart Atlanta first began using its I Heart Atlanta Mark in connection with representing clients when buying and selling homes in Georgia, Defendants copied and began to use the Calvert Mark in connection with buying and selling homes.

28.     Defendants' first use in commerce in the United States of the Calvert Mark began in or around July 2021. I Heart Atlanta first began using the I Heart Atlanta Mark in the United States in January 2017.

122004185

29.    I Heart Atlanta is thus the prior user and has priority of rights to use and to enforce the I Heart Atlanta Mark against Defendants.

30.    The parties' respective I Heart Atlanta Mark and Calvert Mark (shown, *supra*, in paragraph 4 of this Complaint) are confusingly similar, and a number of factors alleged herein confirm that there is not just a likelihood that the consuming public will find Defendants' Calvert Mark confusingly similar to I Heart Atlanta's Mark, but that the consuming public and those in the residential real estate industry already have found the marks confusingly similar.

31.    I Heart Atlanta's mark is a strong service mark which I Heart Atlanta has heavily promoted and used. The mark is suggestive of the residential real estate services that I Heart Atlanta renders such that a client would be required to use his or her imagination, thought, and perception to determine the nature of the services.

32.    Defendants are using a confusingly similar service mark to the I Heart Atlanta Mark in their visual and conceptual elements.

33.    With respect to the parties' design marks, the Calvert Mark has a strong visual similarity to the I Heart Atlanta Mark because both marks include the identical shape of the state of Georgia depicted in the same color red with a design element in the top portion of the mark that incorporates a loop or oval.

34.     I Heart Atlanta's real estate services promoted and rendered under the I Heart Atlanta Mark are identical to Defendants' real estate services that are promoted and rendered under the Calvert Mark.

35.     Both I Heart Atlanta and Defendants promote and render *residential* real estate services under the I Heart Atlanta Mark and Calvert Mark.

36.     Both I Heart Atlanta and Defendants are associated with the real estate agency Keller Williams.

37.     Both I Heart Atlanta and Defendants represent clients buying and selling homes under the I Heart Atlanta Mark and Calvert Mark.

38.     I Heart Atlanta and Defendants are competitors in the residential real estate industry with both parties advertising, marketing, selling, and rendering residential real estate services in the same geographic territory.

39.     The parties use similar advertising media, including through social media, Keller Williams websites, and email marketing that is associated with the promotion of their services under their respective marks.

40.     Upon information and belief, Defendants intentionally, willfully, and knowingly adopted the Calvert Mark which is confusingly similar to the I Heart Atlanta Mark and did so with knowledge and total disregard for I Heart Atlanta's prior trademark rights in its mark.

11

41.     Defendants knew of I Heart Atlanta's priority and established rights in and to the I Heart Atlanta Mark at least as early as July 28, 2021, when Defendants posted a flyer on a social media page associated with Keller Williams Realty and were notified by I Heart Atlanta's broker that the Calvert Mark they were using on the flyer was confusingly similar to the I Heart Atlanta Mark, and therefore, the flyer was taken down from the social media page by I Heart Atlanta's broker.

42.     After Defendants posted the flyer showing the Calvert Mark on July 28, 2021, Plaintiff received numerous phone calls and text messages inquiring whether Defendants were associated with I Heart Atlanta. When I Heart Atlanta's broker had Defendants' flyer removed from the Keller Williams social media page, Defendants informed I Heart Atlanta's broker that they would change the Calvert Mark.

43.     Despite Defendants' promise to change their mark, they posted another flyer on their own Facebook page showing the same confusingly similar mark. Additionally, Defendants posted photos of their signage on their Facebook page that showed the same Calvert Mark.

44.     On October 8, 2021, I Heart Atlanta's counsel sent a cease-and-desist letter to Defendants. A true and correct copy of the letter dated October 8, 2021, is attached to this Complaint as **Exhibit B**.

122004185

45.   After not receiving a response to the October 8th letter, I Heart Atlanta's counsel called Defendants on October 15, 2021. Defendant Deana Calvert answered the phone. However, Ms. Calvert disconnected the phone when I Heart Atlanta's counsel identified himself and stated his reason for calling.

46.   On October 22, 2021, I Heart Atlanta's counsel sent a follow-up cease-and-desist letter to Defendants.  A true and correct copy of the follow-up letter from I Heart Atlanta's counsel dated October 22, 2021, is attached to this Complaint as **Exhibit C**.

47.   On October 25, 2021, Defendants sent a response email to I Heart Atlanta's counsel indicating that it would be reworking its mark. A true and correct copy of the email from Defendant Deana Calvert dated October 25, 2021, is attached to this Complaint as **Exhibit D**.

48.   On November 4, 2021, I Heart Atlanta's counsel sent Defendants a settlement agreement in an attempt to amicably resolve the trademark dispute. A true and correct copy of the letter from I Heart Atlanta's counsel dated November 4, 2021, is attached to this Complaint as **Exhibit E**.

49.   After not receiving any response from Defendants to I Heart Atlanta counsel's letter dated November 4, 2021 with the enclosed settlement agreement, I Heart Atlanta's counsel sent one more follow-up letter on November 17, 2021,

122004185

requesting that Defendants cease use of the Calvert Mark and remove all posts showing the infringing marks from social media. A true and correct copy of the letter from I Heart Atlanta's counsel dated November 17, 2021, is attached to this Complaint as **Exhibit F**.

50.     In response to I Heart Atlanta counsel's letter dated November 17, 2021, Defendants responded by e-mail refusing to cease use of the Calvert Mark. A true and correct copy of the email from Defendants dated November 19, 2021, is attached to this Complaint as **Exhibit G**.

51.     Defendants' residential real estate services offered under the Calvert Mark already has caused public confusion that Defendants are associated with I Heart Atlanta when they have seen the Calvert Mark on advertising and promotional materials. Defendants' continued promotion of its residential real estate services under the Calvert Mark is likely to continue to cause confusion, or to cause mistake or deception and mislead others as to the source, origin, sponsorship or approval of Defendants' services, and suggests that Defendants have an affiliation, sponsorship with or approval by I Heart Atlanta, which they do not have.

52.     Defendants' use of the Calvert Mark on or in connection with residential real estate services is damaging and is causing irreparable harm to I

14

Heart Atlanta, and unless enjoined, Defendants' confusing and deceptive misuse of I Heart Atlanta's trusted I Heart Atlanta Mark will continue to damage and irreparably harm I Heart Atlanta as well as the public.

## COUNT ONE

### Federal Unfair Competition and False Designation of Origin by Defendants
### 15 U.S.C. § 1125(a)

53.    I Heart Atlanta incorporates herein and realleges, as if fully set forth in this paragraph, the allegations in paragraphs 1 to 52 hereof.

54.    I Heart Atlanta is the owner of all rights and title to and has valid and protectable prior rights to the I Heart Atlanta Mark.

55.    The residential real estate services promoted and rendered by Defendants using the Calvert Mark are identical in nature and function to the residential real estate services promoted and rendered by I Heart Atlanta under the I Heart Atlanta Mark.

56.    Defendants have deliberately and willfully attempted to trade on I Heart Atlanta's hard-earned goodwill in its I Heart Atlanta Mark and the reputation established by I Heart Atlanta in connection with its residential real estate business, and deliberately and willfully attempted to confuse consumers as to the origin and sponsorship of Defendants' services and to pass off their services in commerce as those of I Heart Atlanta.

122004185

57.     Defendants' unauthorized and tortious conduct also has deprived and will continue to deprive I Heart Atlanta of the ability to control the consumer perception of its residential real estate services offered under the I Heart Atlanta Mark, placing the valuable reputation and goodwill of I Heart Atlanta in the hands of Defendants.

58.     Defendants' conduct in using the Calvert Mark already has caused confusion and is likely to cause more confusion, mistake or deception as to the affiliation, connection and association of Defendants and their residential real estate services with I Heart Atlanta, and as to the sponsorship, origin or approval of Defendants and their real estate services by I Heart Atlanta, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

59.     As a result of Defendants' conduct, I Heart Atlanta has suffered damages as well as the continuing loss of the goodwill and reputation established by I Heart Atlanta in its I Heart Atlanta Mark.  Unless permanently enjoined, Defendants' conduct has caused and will continue to cause I Heart Atlanta irreparable harm for which there exists no adequate remedy at law.

60.     I Heart Atlanta is entitled to an accounting of all profits derived by Defendants from their trademark infringement of the I Heart Atlanta Mark measured by Defendants' gross sales, which are appropriate here where

Defendants' conduct was willful and deliberate, Defendants have been unjustly enriched, and it is necessary to deter future conduct of Defendants, and that such profits award be enhanced pursuant to 15 U.S.C. § 1117.

61.    Defendants' actions have been knowing, willful, and deliberate and amount to exceptional circumstances, justifying an award of attorneys' fees to I Heart Atlanta pursuant to 15 U.S.C. § 1117.

## COUNT TWO

### Common Law Trademark Infringement
### and Unfair Competition by Defendants

62.    I Heart Atlanta incorporates herein and realleges, as if fully set forth in this paragraph, the allegations in paragraphs to 1 to 52 hereof.

63.    I Heart Atlanta has prior and exclusive common law rights to use the I Heart Atlanta Mark for residential real estate services.

64.    Defendants' use of the virtually identical Calvert Mark already has caused confusion and is likely to cause more confusion, mistake or deception, and therefore infringes the I Heart Atlanta Mark in violation of the common law of Georgia.

65.    Defendants' actions in intentionally misappropriating, adopting, and using the Calvert Mark to trade on I Heart Atlanta's hard-earned goodwill in its I Heart Atlanta Mark, as well as to cause confusion as to the origin and sponsorship

17

of Defendants' services, has unjustly enriched Defendants and constitute unfair competition in violation of the common law of Georgia.

66.    Defendants had actual and constructive knowledge of I Heart Atlanta's prior use of and rights in its I Heart Atlanta Mark before the acts by Defendants complained of herein.

67.    As a result of Defendants' conduct, I Heart Atlanta has suffered damages as well as the continuing loss of the goodwill and reputation established by I Heart Atlanta in its I Heart Atlanta Mark. Unless permanently enjoined, Defendants' conduct has caused and will continue to cause I Heart Atlanta irreparable harm for which there exists no adequate remedy at law.

68.    I Heart Atlanta is entitled to recover from Defendants all damages sustained due to Defendants' improper conduct in an amount to be proven at trial.

## COUNT THREE

### Violation by Defendants of the Georgia Deceptive Trade Practices Act O.C.G.A. § 10-1-370 *et seq.*

69.    I Heart Atlanta incorporates herein and realleges, as if fully set forth in this paragraph, the allegations in paragraphs 1 to 52 hereof.

70.    By reason of the foregoing conduct relating to Defendants' use of their Calvert Mark, Defendants have engaged in acts that have caused, and that will

continue to cause, a likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of Defendants' residential real estate services.

71.     By reason of the foregoing, Defendants have engaged in acts that have caused and that will continue to cause a likelihood of confusion or misunderstanding as to the affiliation, connection, or association with or certification by another.

72.     Defendants' conduct constitutes unfair and deceptive trade practices in violation of Georgia law, including the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370 *et seq.*

73.     Defendants' actions complained of herein have caused and, unless permanently enjoined by the Court under O.C.G.A. § 10-1-373(a), will continue to cause irreparable harm to I Heart Atlanta and to its services for which there is no adequate remedy at law.

74.     I Heart Atlanta is entitled to recover its attorney's fees and costs incurred in connection with Defendants' deceptive trade practices pursuant to O.C.G.A. § 10-1-373(b).

## **PRAYER FOR RELIEF**

WHEREFORE, I Heart Atlanta prays:

1.     That the Court award judgment to I Heart Atlanta on all counts of the

19

122004185

Complaint;

2.      That Defendants, their officers, agents, employees and those persons or entities in active concert or participation with them be permanently enjoined from:

(a)     using, marketing, promoting, selling, offering for sale, or rendering any residential real estate services under the Calvert Mark, or any variant thereof which is a colorable imitation of or otherwise likely to be mistaken for or confused with the I Heart Atlanta Mark;

(b)     otherwise infringing upon the I Heart Atlanta Mark; and

(c)     otherwise unfairly competing with I Heart Atlanta or engaging in any deceptive trade practice, trading off of I Heart Atlanta's reputation or goodwill, or injuring I Heart Atlanta's reputation;

3.      That Defendants and any subsidiaries and affiliates be required to take prompt, affirmative action within thirty (30) days of entry of order or judgment to:

(a)     withdraw from the public and destroy any advertisements or promotional materials that contain or use the infringing Calvert Mark or use the I Heart Atlanta Mark, or any confusingly similar marks, in relation to Defendants' business in the United States; and

122004185

(b)     file an affidavit with the Court confirming that these actions have been taken pursuant to 15 U.S.C. § 1116;

4.     That I Heart Atlanta have a judgment against Defendants for an accounting of all profits derived by Defendants from their trademark infringement of the I Heart Atlanta Mark measured by Defendants' gross sales, which are appropriate here where Defendants' conduct was willful and deliberate, Defendants have been unjustly enriched, and it is necessary to deter future conduct of Defendants, and that such profits award be enhanced pursuant to 15 U.S.C. § 1117;

5.     That I Heart Atlanta have judgment against Defendants for I Heart Atlanta's reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1117(a) and O.C.G.A. § 10-1-373(b); and

6.     That the Court grant such other relief as it deems just and equitable.

Respectfully submitted this 21st day of December, 2021.

TROUTMAN PEPPER HAMILTON
SANDERS LLP

 /s/ *John M. Bowler*
John M. Bowler
Georgia Bar No. 071770
Michael D. Hobbs, Jr.
Georgia Bar No. 358160
Courtney Adams Thornton
Georgia Bar No. 121328
600 Peachtree Street, N.E., Suite 3000
Atlanta, Georgia 30308-2216
(404) 885-3000
(404) 885-3995 (facsimile)
John.bowler@troutman.com
michael.hobbs@troutman.com
courtney.thornton@troutman.com

*Attorneys for Plaintiff I Heart Atlanta, LLC*

22

# EXHIBIT A

**Generated on:** This page was generated by TSDR on 2021-12-16 13:27:28 EST

**Mark:**



| | | | |
|---|---|---|---|
| **US Serial Number:** | 97087009 | **Application Filing Date:** | Oct. 21, 2021 |
| **Filed as TEAS Plus:** | Yes | **Currently TEAS Plus:** | Yes |
| **Register:** | Principal | | |
| **Mark Type:** | Service Mark | | |

**TM5 Common Status Descriptor:**



LIVE/APPLICATION/Awaiting Examination

The trademark application has been accepted by the Office (has met the minimum filing requirements) and has not yet been assigned to an examiner.

**Status:** New application will be assigned to an examining attorney approximately 6 months after filing date.

**Status Date:** Oct. 25, 2021

# Mark Information

| | |
|---|---|
| **Mark Literal Elements:** | None |
| **Standard Character Claim:** | No |
| **Mark Drawing Type:** | 2 - AN ILLUSTRATION DRAWING WITHOUT ANY WORDS(S)/ LETTER(S)/NUMBER(S) |
| **Description of Mark:** | The mark consists of a design of the state of Georgia in red, a white heart is depicted in the top left portion of the design. |
| **Color Drawing:** | Yes |
| **Color(s) Claimed:** | The color(s) red and white is/are claimed as a feature of the mark. |
| **Design Search Code(s):** | 01.17.08 - United States, maps of; Maps of the United States<br>02.11.01 - Hearts excluding hearts as carriers or depicted on playing cards |

# Goods and Services

**Note:**
The following symbols indicate that the registrant/owner has amended the goods/services:
- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

**For:** Providing a database of information about residential real estate listings in different neighborhoods and communities; Providing a database of residential real estate listings within neighborhoods and communities specifically identified by users; Providing an Internet website portal offering information in the fields of real estate concerning the purchase and sale of new and resale of homes and condos; Providing information in the field of real estate via a website; Providing information in the field of real estate via the Internet; Providing real estate listings and real estate information via a website; Providing real estate listings and real estate information via the Internet; Providing real estate listings via the Internet; Real estate acquisition services; Real estate agency services; Real estate consultation; Real estate equity sharing, namely, managing and arranging for co-ownership of real estate; Real estate investment consultancy; Real estate investment services; Real estate listing; Real estate management consultation; Real estate management services; Real estate multiple listing services; Real estate valuation services; Real estate valuations; Residential real estate agency services

| | | | |
|---|---|---|---|
| **International Class(es):** | 036 - Primary Class | **U.S Class(es):** | 100, 101, 102 |
| **Class Status:** | ACTIVE | | |
| **Basis:** | 1(a) | | |
| **First Use:** | Jan. 01, 2017 | **Use in Commerce:** | Jan. 01, 2017 |

# Basis Information (Case Level)

| | | | |
|---|---|---|---|
| **Filed Use:** | Yes | **Currently Use:** | Yes |
| **Filed ITU:** | No | **Currently ITU:** | No |
| **Filed 44D:** | No | **Currently 44E:** | No |
| **Filed 44E:** | No | **Currently 66A:** | No |
| **Filed 66A:** | No | **Currently No Basis:** | No |
| **Filed No Basis:** | No | | |

## Current Owner(s) Information

| | |
|---|---|
| **Owner Name:** | I Heart Atlanta, LLC |
| **Owner Address:** | 2819 Bob Cox Rd, NW<br>Marietta, GEORGIA UNITED STATES 30062 |
| **Legal Entity Type:** | LIMITED LIABILITY COMPANY | **State or Country Where Organized:** | GEORGIA |

## Attorney/Correspondence Information

**Attorney of Record**

| | |
|---|---|
| **Attorney Name:** | Jeffrey Sturman |
| **Attorney Primary Email Address:** | tm-docket@sturmanlaw.com | **Attorney Email Authorized:** | Yes |

**Correspondent**

| | |
|---|---|
| **Correspondent Name/Address:** | Jeffrey Sturman<br>STURMAN LAW LLC<br>PO BOX 371706<br>DENVER, COLORADO UNITED STATES 80237 |
| **Phone:** | 720-772-1724 |

**Domestic Representative - Not Found**

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Dec. 06, 2021 | PETITION TO DIRECTOR - MAKE SPECIAL - DENIED | 77666 |
| Dec. 06, 2021 | ASSIGNED TO PETITION STAFF | 77666 |
| Nov. 03, 2021 | PETITION TO DIRECTOR - MAKE SPECIAL - RECEIVED | 80807 |
| Nov. 09, 2021 | NOTICE OF DESIGN SEARCH CODE E-MAILED | |
| Nov. 08, 2021 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED IN TRAM | |
| Nov. 03, 2021 | TEAS PETITION TO DIRECTOR RECEIVED | 1111 |
| Oct. 25, 2021 | NEW APPLICATION ENTERED IN TRAM | |

## TM Staff and Location Information

**TM Staff Information - None**

**File Location**

| | | | |
|---|---|---|---|
| **Current Location:** | PETITIONS OFFICE | **Date in Location:** | Dec. 06, 2021 |

**Generated on:** This page was generated by TSDR on 2021-12-16 13:28:26 EST

**Mark:**



| | | |
|---|---|---|
| **US Serial Number:** 97114297 | **Application Filing Date:** | Nov. 08, 2021 |
| **Filed as TEAS Plus:** Yes | **Currently TEAS Plus:** | Yes |
| **Register:** Principal | | |
| **Mark Type:** Trademark | | |

**TM5 Common Status Descriptor:**



LIVE/APPLICATION/Awaiting Examination

The trademark application has been accepted by the Office (has met the minimum filing requirements) and has not yet been assigned to an examiner.

**Status:** New application will be assigned to an examining attorney approximately 6 months after filing date.

**Status Date:** Nov. 17, 2021

## Mark Information

**Mark Literal Elements:** None

**Standard Character Claim:** No

**Mark Drawing Type:** 2 - AN ILLUSTRATION DRAWING WITHOUT ANY WORDS(S)/ LETTER(S)/NUMBER(S)

**Description of Mark:** The mark consists of a design of the state of Georgia in red, a white heart is depicted in the top left portion of the design.

**Color Drawing:** Yes

**Color(s) Claimed:** The color(s) red and white is/are claimed as a feature of the mark.

**Design Search Code(s):** 01.17.11 - Maps of states of the United States, excluding Texas
02.11.01 - Hearts excluding hearts as carriers or depicted on playing cards

## Goods and Services

**Note:**
The following symbols indicate that the registrant/owner has amended the goods/services:
- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

**For:** Jewelry; Key chains

**International Class(es):** 014 - Primary Class     **U.S Class(es):** 002, 027, 028, 050

**Class Status:** ACTIVE

**Basis:** 1(b)

## Basis Information (Case Level)

| | | | |
|---|---|---|---|
| **Filed Use:** No | | **Currently Use:** | No |
| **Filed ITU:** Yes | | **Currently ITU:** | Yes |
| **Filed 44D:** No | | **Currently 44E:** | No |
| **Filed 44E:** No | | **Currently 66A:** | No |
| **Filed 66A:** No | | **Currently No Basis:** | No |
| **Filed No Basis:** No | | | |

# Current Owner(s) Information

**Owner Name:** I Heart Atlanta, LLC

**Owner Address:** 2819 Bob Cox Rd, NW
Marietta, GEORGIA UNITED STATES 30062

**Legal Entity Type:** LIMITED LIABILITY COMPANY

**State or Country Where Organized:** GEORGIA

# Attorney/Correspondence Information

**Attorney of Record**

**Attorney Name:** Jeffrey Sturman

**Attorney Primary Email Address:** tm-docket@sturmanlaw.com

**Attorney Email Authorized:** Yes

**Correspondent**

**Correspondent Name/Address:** JEFFREY STURMAN
STURMAN LAW LLC
PO BOX 371706
DENVER, COLORADO UNITED STATES 80237

**Phone:** 720-772-1724

**Domestic Representative - Not Found**

# Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Nov. 18, 2021 | NOTICE OF DESIGN SEARCH CODE E-MAILED | |
| Nov. 17, 2021 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED IN TRAM | |
| Nov. 11, 2021 | NEW APPLICATION ENTERED IN TRAM | |

# TM Staff and Location Information

**TM Staff Information - None**

**File Location**

**Current Location:** NEW APPLICATION PROCESSING

**Date in Location:** Nov. 17, 2021

**Generated on:** This page was generated by TSDR on 2021-12-16 13:29:08 EST

**Mark:**



| | | | |
|---|---|---|---|
| **US Serial Number:** | 97105609 | **Application Filing Date:** | Nov. 02, 2021 |
| **Filed as TEAS Plus:** | Yes | **Currently TEAS Plus:** | Yes |
| **Register:** | Principal | | |
| **Mark Type:** | Trademark | | |

**TM5 Common Status Descriptor:**



LIVE/APPLICATION/Awaiting Examination

The trademark application has been accepted by the Office (has met the minimum filing requirements) and has not yet been assigned to an examiner.

**Status:** New application will be assigned to an examining attorney approximately 6 months after filing date.

**Status Date:** Nov. 05, 2021

# Mark Information

**Mark Literal Elements:** None

**Standard Character Claim:** No

**Mark Drawing Type:** 2 - AN ILLUSTRATION DRAWING WITHOUT ANY WORDS(S)/ LETTER(S)/NUMBER(S)

**Description of Mark:** The mark consists of the state of Georgia in red, a white heart is depicted in the top left portion of the design.

**Color Drawing:** Yes

**Color(s) Claimed:** The color(s) red and white is/are claimed as a feature of the mark.

**Design Search Code(s):** 01.17.11 - Maps of states of the United States, excluding Texas
02.11.01 - Hearts excluding hearts as carriers or depicted on playing cards

# Goods and Services

**Note:**
The following symbols indicate that the Â registrant/owner has amended the goods/services:
- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

**For:** Decals; Stickers; Labels of paper or cardboard; Address stamps; Bookmarks; Bumper stickers; Cardboard tags; Coasters of cardboard; Cushioning materials of paper; Envelopes; Name badges; Printed newsletters in the field of real estate; Printed notepads; Printed pocket calendars; Stuffing materials of paper; Writing instruments

**International Class(es):** 016 - Primary Class   **U.S Class(es):** 002, 005, 022, 023, 029, 037, 038, 050

**Class Status:** ACTIVE

**Basis:** 1(b)

# Basis Information (Case Level)

| | | | |
|---|---|---|---|
| **Filed Use:** | No | **Currently Use:** | No |
| **Filed ITU:** | Yes | **Currently ITU:** | Yes |
| **Filed 44D:** | No | **Currently 44E:** | No |
| **Filed 44E:** | No | **Currently 66A:** | No |
| **Filed 66A:** | No | **Currently No Basis:** | No |

**Filed No Basis:** No

# Current Owner(s) Information

**Owner Name:** I Heart Atlanta, LLC

**Owner Address:** 2819 Bob Cox Rd, NW
Marietta, GEORGIA UNITED STATES 30062

**Legal Entity Type:** LIMITED LIABILITY COMPANY

**State or Country Where Organized:** GEORGIA

# Attorney/Correspondence Information

**Attorney of Record**

**Attorney Name:** Jeffrey Sturman

**Attorney Primary Email Address:** tm-docket@sturmanlaw.com

**Attorney Email Authorized:** Yes

**Correspondent**

**Correspondent Name/Address:** JEFFREY STURMAN
STURMAN LAW LLC
PO BOX 371706
DENVER, COLORADO UNITED STATES 80237

**Phone:** 720-772-1724

**Domestic Representative - Not Found**

# Prosecution History

| Date | Description | Proceeding Number |
|------|-------------|-------------------|
| Nov. 13, 2021 | NOTICE OF DESIGN SEARCH CODE E-MAILED | |
| Nov. 12, 2021 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED IN TRAM | |
| Nov. 05, 2021 | NEW APPLICATION ENTERED IN TRAM | |

# TM Staff and Location Information

**TM Staff Information - None**

**File Location**

**Current Location:** NEW APPLICATION PROCESSING

**Date in Location:** Nov. 05, 2021

# EXHIBIT B



# Sturman Law

Intellectual Property | Brand Management

<u>Confidential Settlement Communications</u>

<u>Pursuant to Rule 408 of the Federal Rules of Evidence</u>

October 08, 2021

Sent via email and USPS

Jacob & Deana Calvert
The Calvert Team
200 E 2nd Ave
Rome, GA 30161
deanacalvert@kw.com

Mr. and Ms. Calvert,

My firm represents I Heart Atlanta, LLC ("IHA") in regards to trademark matters. It has been brought to my attention that you, Jacob Calvert and Deana Calvert ("Calvert") are engaging in conduct which infringes upon IHA's trademark rights. As U.S. trademark law requires IHA to take action in order to protect their well established and distinct trademark rights, we must ask you to cease and desist from such use of any trademark that is confusingly similar in nature to the trademark depicted below (IHA's Trademark).



It is imperative to inform you that my client has no desire to pursue further legal action in regards to this matter, and would prefer to resolve these concerns amicably. IHA has generously offered to provide financial considerations to assist in your creation of a new logo, and they are still open to discussing doing so if you are willing to resolve this matter expeditiously. While I must inform you of the legal basis for our claims which are based upon long standing legal precedent, it is our hope that these precedents need not be asserted in federal court.

It is well established that Section 43(a) of the Lanham Act created "two distinct bases of liability: false associations . . . and false advertising". Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1384 (2014). Further, "simple claims of false representations in advertising are actionable under section 43(a) when brought by competitors of the wrongdoer." Waits v. Frito-Lay, Inc., 978 F. 2d 1093, 1109 (9th Cir. 1992). The unauthorized and misleading advertising and promotion of real estate related services by your company in connection with a trademark that is clearly confusingly similar to IHA's Trademark, is likely to cause confusion, mistake, or deceive consumers, in violation of 15 U.S. Code §1125, et al. Your actions constitute an "unfair and fraudulent advantage" and passing off, as you are not authorized to use IHA's Trademark, or any trademark which is confusingly similar to IHA's Trademark. William R. Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 532 (1924). Consumers would clearly be confused between your advertisement of services under a trademark that is confusingly similar to the IHA Trademark. Team Tires Plus, Ltd. v. Tires Plus, Inc., 394 F.3d 831, 832 (10th Cir. 2005) (quoting Heartsprings v. Heartspring, 143 F.3d 550, 554 (10th Cir. 1998)).

As IHA can establish priority of use through documentary evidence, and your trademark is confusingly similar in nature, you are liable for trademark infringement. See Frehling Enter., Inc. v. Int'l Select Grp., Inc., 192 F.3d 1330, 1335 (11th Cir. 1999). It is not necessary to detail

each one of the likelihood of confusion factors, as each one is factually in IHA's favor. See Lone Star Steakhouse & Saloon, Inc., v. Longhorn Steaks, Inc., 122 F.3d 1379, 1382 (11th Cir. 1997). IHA's extensive promotion and continuous use of IHA's Trademark is indisputable, as is your knowledge of these facts. See John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 974 n.13 (11th Cir. 1983).

Further, of extreme concern is that we have been informed of actual confusion by relevant parties, which the federal court of appeals has advised deserves "special attention" should this matter come before a court. See Caliber Automotive Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC, 605 F.3d 931, 936-937 (11th Cir. 2010). Even one instance of confusion in a matter with facts like those at hand is significant. See Safeway Stores, v. Safeway Discount Drugs, 675 F.2d 1160, 1166-1167 (11th Cir. 1982). "[V]ery little proof of actual confusion would be necessary to prove the likelihood of confusion". Id. (quoting World Carpets, Inc. v. Dick Littrell's New World Carpets, 438 F.2d 482, 489 (5th Cir. 1971).

Your receipt of this communication confirms your notice of the willful nature of your infringing conduct. We would prefer to resolve this matter without taking further legal action to enforce all remedies available under the law. However, you should be aware that Federal courts throughout the United States continue to hold that the U.S. Supreme Court's decision in *Octane Fitness* and its fee shifting implications apply to violations of the Lanham Act. The *Octane Fitness* standard only serves to reinforce such an award based upon the clear evidence of your willful infringement of IHA's Trademark in bad faith. See Id. at 1169.

Therefore, if you fail to comply with the requirements detailed supra, and IHA has to take action in federal court, you can expect to be liable for monetary damages, including attorneys

fees and costs associated with such legal action. As a result of the serious nature of this matter, we must ask for your immediate compliance and to:

1. Cease and desist from all use of any trademark that is confusingly similar to IHA's Trademark.

2. Contact my firm to facilitate the resolution of this matter, and entering into of a written settlement agreement.

We look forward to the opportunity to resolve this matter in an amicable and expeditious manner and thank you in advance for your prompt attention.

Best regards,

STURMAN LAW LLC

By:

Jeffrey Sturman

# EXHIBIT C



# Sturman Law
Intellectual Property | Brand Management

<u>Confidential Settlement Communications</u>

<u>Pursuant to Rule 408 of the Federal Rules of Evidence</u>

October 22, 2021                                              Sent via email and FedEx

Jacob & Deana Calvert
The Calvert Team
200 E 2nd Ave
Rome, GA 30161
deanacalvert@kw.com

Mr. and Ms. Calvert,

As you are aware, my firm represents I Heart Atlanta, LLC ("IHA") in regards to trademark matters. We have attempted to reach you numerous times via both written and telephone communications. Except for a brief telephone call on October 15, 2021 in which Ms. Calvert disconnected the call after I identified myself and the reason for my call, our attempts to speak with you have been unsuccessful. We can confirm that you received our letter dated October 8, 2021 via USPS, which was signed for at your office on October 18, 2021, by C. Looney.

Despite your continued infringement upon IHA's Trademark, and disregard of our polite attempts to resolve this matter, we want to reiterate that IHA remains committed to taking reasonable steps to resolve this matter amicably. However, your failure to communicate with us has not made this possible. Unfortunately, should you continue to fail to engage with us to amicably resolve this matter, you can expect further legal action to follow.

We remain extremely concerned based upon the actual confusion that we have been advised of in regards to your logo. These concerns are furthered by your continuous use of this confusingly similar logo, including on social media. As we have advised previously, your attempts to trade off the distinctiveness and goodwill of IHA's Trademark logo is in violation of federal law. See 15 U.S. Code §1125, et al. This is in addition to other violations of state statutes and regulations.

In seeking to resolve this matter as amicably as possible, IHA has refrained from bringing this matter to the attention of the Georgia Real Estate Commission. However, your continued refusal to even discuss resolution of this matter with us, leaves no other option than to take all necessary steps to protect the consuming public and the goodwill of our intellectual property.

The Georgia Administrative Code makes clear that any advertising that is misleading in any material fact is expressly prohibited. See Ga. Comp. R. & Regs. r. 520-1-.09. Reports to us of actual confusion between your logo and IHA's Trademark logo are prima facie evidence of the misleading nature of your advertising. Further, your misleading advertising is considered an unfair trade practice. See Code of Ga. §43-40-25 (b)(2). Moreover, your actions constitute dishonest dealing, and a total disregard for your obligations to safeguard the public, despite being made aware of the extremely serious implications of your conduct. See Code of Ga. §43-40-25 (b)(25).

We presume that you are well aware of your requirements to adhere to the rules and regulations set forth by the State of Georgia, of which acting in an ethical manner is an underlying principle. It is therefore not surprising that penalties for violations by real estate professionals are quite serious.

The legislative purpose of the Georgia Fair Business Practices Act is to "protect consumers and legitimate business enterprises from unfair or deceptive practices in the conduct of any trade or commerce in part or wholly in the state" O.C.G.A. § 10-1-391. Moreover, the General Assembly intended that violation of the Act "be swiftly stopped, and this part shall be liberally construed and applied to promote its underlying purposes and policies". Id.

We should further note that your intentions are irrelevant, in regards to the public deception as a result of your logo. All that matters is that the consuming public has been confused, and remain at risk of further deception as a result of your continuous willful infringement. Eckles v. Atlanta Technology Group, Inc., 267 Ga. 801, 803 (Ga. 1997) (quoting Future Professionals, Inc. v. Darby, 266 Ga. 690, 691 (Ga. 1996). See also Giant Mart Corp. v. Giant Discount Foods, 279 S.E.2d 683 (Ga. 1981).

Your continued conduct is not only unethical, it is in direct violation of both federal and state laws. Unfair competition has been held to be a serious violation under common law for many decades. "While a competitor may, generally speaking, take away all the customers of another that he can, there are means which he must not use. One of these is deceit. The false use of another's name as maker or source of his own goods is deceit . . . ." Ely-Norris Safe Co. v. Mosler Safe Co., 7 F.2d 603, 604 (2d Cir. 1925). "In both confusion of source and confusion of sponsorship cases, the similarity of the marks factor constitutes the heart of our analysis." King of Mountain Sports v. Chrysler Corp, 185 F.3d 1084, 1089 (10th Cir. 1999).

"The ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." Homeowners Group, Inc. v. Home Marketing Specialists, Inc., 931 F.2d 1100, 1107 (6th Cir. 1991). Reports of actual confusion between your infringing logo and IHA's Trademark logo provide a clear answer to this question.

Therefore, we must again ask that you immediately -

1. Cease and desist from all use of your current logo and any trademark that is confusingly similar to IHA's Trademark.

2. Contact my firm to facilitate the resolution of this matter, and entering into of a written settlement agreement.

There is still time to resolve this matter without further legal action. However, my client cannot allow the willful infringement, and the unfair and unethical nature of your conduct to continue. Therefore, should you fail to comply with the above requirements immediately, and we do not hear from you by close of business on Monday, October 25, 2021, we will proceed accordingly.

I want to stress that my client did not wish to reach this point, nor do they seek to engage in litigating this matter. We have only reached this junction because you have decided to continue infringing upon IHA's Trademark, and you refuse to communicate with us in any manner. It is truly unfortunate that you have chosen this path. We nonetheless remain hopeful that we will hear from you immediately upon receipt of this communication, in order to facilitate an amicable resolution of this matter.

Thank you in advance for your prompt attention.

Best regards,

STURMAN LAW LLC

By:

Jeffrey Sturman

CC: Matt Pitts (mattpitts@kw.com); Brett Caldwell (bcaldwell@kw.com)
Attachment: Letter dated October 08, 2021

# EXHIBIT D

On Mon, Oct 25, 2021 at 8:47 AM Deana Calvert <deanacalvert@kw.com> wrote:
Good Morning,

We are just as perplexed as you over all of this, but that's neither here nor there.

We have been in the process of gathering information and figuring out which way to move forward. We recently obtained our license in AL so we will be moving forward with reworking our logo so it it more universal across the board

Jacob and Deana Calvert

On Fri, Oct 22, 2021 at 7:35 PM Jeffrey Sturman <jeffrey@sturmanlaw.com> wrote:
Mr. and Ms. Calvert,

Good evening. Please see the attached communications which are extremely time sensitive.

We are perplexed by your continued refusal to communicate with us in regards to your infringing trademark logo, in particular, as the legal and professional ramifications are so serious and costly. However, we have continued to reach out to you prior to taking further legal action, in the hopes that such actions can be avoided. I stress again that an amicable resolution of this matter is preferable to my client, and any further steps and the resulting penalties will be as a result of your unfortunate inaction and defiance.

We look forward to your immediate response, and thank you in advance for your prompt attention to this matter.

Have a nice night and weekend.

Best regards,

Jeffrey

Jeffrey Sturman, Esq.
Sturman Law LLC
720-772-1724
Jeffrey@Sturmanlaw.com



## Sturman Law

Intellectual Property | Brand Management

This message, including attachments, is confidential and may contain information protected by the attorney-client privilege or work product doctrine. If you are not the addressee, any disclosure, copying, distribution, or use of the contents of this message are prohibited. If you have received this email in error, please destroy it and notify me immediately. Nothing in this email shall create an attorney-client relationship between you and Sturman Law, LLC.



# Sincerely,

## Jacob & Deana

706-591-8813
calvertgroup@kw.com
@CalvertGroupGA
www.calvertrealtyga.com





**kw** NORTHWEST
KELLERWILLIAMS REALTY   Each Office is Independently Owned and Operated



# EXHIBIT E

On Thu, Nov 4, 2021 at 6:11 PM Jeffrey Sturman <jeffrey@sturmanlaw.com> wrote:
Good evening. Thank you for taking a few moments to speak with me yesterday in regards to resolving this matter.

Per our conversation, please see the attached settlement agreement. My client wants to again stress that they would prefer to resolve this matter without further legal action. However, without confirmation that the matter has been resolved, they cannot do so.

The attached agreement is straight forward, and does not ask anything of you that is unreasonable, nor unfair. Nonetheless, we welcome your comments, and if there are any specific concerns that you have with the agreement, we would be glad to discuss them with you.

Due to the nature of this matter, we must ask for a response from you by Wednesday, November 10, 2021, in regards to this agreement and resolution of this matter.

I also want to let you know that it would go a long ways toward showing that you have no intentions to interfere further with my client's trademark rights, and are working in good faith to resolve this matter, if you immediately remove all social media posts that contain your current logo design.

We look forward to hearing from you, and the opportunity to resolve this matter both amicably and expeditiously.

Thank you. Have a nice night.

Best regards,

Jeffrey

# EXHIBIT F



# Sturman Law

Intellectual Property | Brand Management

Confidential Settlement Communications

Pursuant to Rule 408 of the Federal Rules of Evidence

November 17, 2021

Sent via email and FedEx

Jacob & Deana Calvert
The Calvert Team
200 E 2nd Ave
Rome, GA 30161
deanacalvert@kw.com

Mr. and Ms. Calvert,

It is unfortunate that I am having to draft this letter, as my client has done all that they can to be fair, reasonable, and patient in regards to this matter. While we appreciate that you have advised of your intentions to create a new logo, we cannot resolve this matter without an agreed upon settlement in writing. In the interest of providing you with sufficient time to express any concerns that you had with the terms of the proposed settlement agreement, we have awaited your reply so that an amicable resolution to this matter can be reached.

My client is honestly more disappointed with you than they are frustrated. You are both in the field of real estate and deal with agreements all day long. The proposed agreement is more straightforward than any real estate transaction you will close all year. Moreover, my client has held off on litigating this matter, and sought your input on the wording of any clauses of concern within the agreement. My email dated November 04, 2021, which contained the proposed

1 of 4

settlement agreement advised "[t]he attached agreement is straight forward, and does not ask anything of you that is unreasonable, nor unfair. Nonetheless, we welcome your comments, and if there are any specific concerns that you have with the agreement, we would be glad to discuss them with you."

Of further concern is that you have not even taken down the social media posts that we requested be removed many weeks ago. My email on November 04, 2021 advised that, "I also want to let you know that it would go a long ways toward showing that you have no intentions to interfere further with my client's trademark rights, and are working in good faith to resolve this matter, if you immediately remove all social media posts that contain your current logo design." Yet, it has been almost two weeks since we provided you with the agreement, and we have not heard from you, nor have the social media posts containing the infringing logo, been removed. My client feels that your complete silence demonstrates a total lack of respect for the situation.

We are perplexed at why you would want to litigate this matter, which is where you can expect this matter to head, barring the expeditious entering into of a written settlement agreement. As we have already advised, actual confusion between your logo trademark and IHA's trademark has already occurred. Actual confusion regarding trademarks has been held to be "the most important single factor" in a trademark infringement case. Conagra, Inc. v. Singleton, 743 F.2d 1508, 1515 (11th Cir. 1984) (citing Safeway Stores, v. Safeway Discount Drugs, 675 F.2d 1160 (11th Cir. 1982)); E. Remy Martin & Co. v. Shaw-Ross Int'l Imports, Inc., 756 F.2d 1525, 1529 (11th Cir. 1985) (actual confusion "is the best such evidence"). "Nothing shows the likelihood of confusion more than the fact of actual confusion." Efficiency, Inc. v. Lubecore Intern., Inc., 730 F.3d 494, 517 (6th Cir. 2013) (citing Frisch's Restaurant, Inc. v. Shoney's, Inc., 759 F.2d 1261, 1267 (6th Cir. 1985)); World Carpets Inc. v. Dick Littrell's New

World. Carpets "World Carpets", 438 F.2d 482 (5th Cir. 1971) (citing Spangler Candy Co. v. Crystal Pure Candy Co., 353 F.2d 641 (7th Cir. 1966)) ("[t]here can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion"). Further, "reason tells us that . . . very little proof of actual confusion would be necessary to prove the likelihood of confusion". Safeway Stores, v. Safeway Discount Drugs, 675 F.2d at 1166-1167 (quoting World Carpets 438 F.2d at 489). Whereas, "an almost overwhelming amount of proof would be necessary to refute such proof." World Carpets, 438 F.2d at 489.

As your infringement upon IHA's trademark rights continues, you can expect to be held personally liable for willful trademark infringement, among other legal claims. Your knowledge of the occurrence of actual confusion, and thereafter continued use of the infringing trademark, clearly establishes bad faith in this matter. Therefore, you can also expect to be held accountable for attorney fees and costs in this matter. See Tobinick v. Novella, 884 F.3d 1110, 1118 (11th Cir. 2018) (applying the "Octane Fitness Standard" to trademark infringement cases in the eleventh circuit).

My client is still hopeful that this matter can be resolved amicably, however, your silence since the sending of a proposed settlement agreement almost two weeks ago, has accelerated IHA's preparation to initiate litigation, and seek a preliminary injunction from the federal court. As you have failed to contact us in regards to any issues with the settlement agreement, I have been advised to inform you that if all terms set forth in the settlement agreement sent to you on November 04, 2021 are not met, and you have not signed such agreement by 5pm EST, Friday, November 19, 2021, the opportunity to resolve this matter without judicial intervention will be expire.

We truly hope that you decide to be reasonable, as there is still time to avoid an avalanche of monetary damages and attorneys fees in a judgement entered personally against you. We look forward to hearing from you expeditiously.

Best regards,

STURMAN LAW LLC

By:

Jeffrey Sturman

# EXHIBIT G

-------- Original Message --------
Subject: Logo
From: Deana Calvert <deanacalvert@kw.com>
Date: Fri, November 19, 2021 7:49 pm
To: Matthew Pitts <mattpitts@kw.com>, david@iheartatlantarealty.com

In the Spirit to get this resolved, please see below:

1. We thought all this was over last week.
2. We still have not been provided with evidence that your logo is trademarked and only you have the exclusive rights to use a Red GA. I have found where your business name is trademarked but not the actual logo.

3. We used this logo for months with no issues. The only reason you became aware of it is because of a flyer I posted in the KW SECRET group for a business I have for sale. If it weren't for that post, I have no doubt you would've even noticed our old logo.

4. I'm politely asking you to have your attorney stop sending letters and emails. At this point it's border line harassment, Not to mention straight up bullying.

5. Keller Williams talks about culture and in negotiating it should be a WIN WIN for everyone. The last letter I received referenced this just being a negotiating thing. Well, from what I have seen there's no WIN WIN for everyone. It's a "WIN" for one side, while we bully the other side to try and get them to do what we want them to.

6. Per my previous emails, we have told you we are moving forward with a new logo. That's all there is to it. We do not need to sign a lengthy agreement. We have given you our word and that's what we are doing.

7. We are in no way shape, fashion, or form a threat to your company. We service completely different areas. If I have clients in Atlanta, I refer them out! My sister being a prime example! She bought in Atlanta and I referred her to an agent in that area.

8. I have to admit that I am extremely disappointed that you feel the way you do. We are an honest and hard working couple as are you and your wife. We are out there grinding in the areas we service everyday just like y'all to provide for our families.


To reiterate, we have told you we are moving forward and putting this behind us. We ask that you do the same.

Kind Regards,
Deana Calvert
--



Sincerely,

Jacob & Deana



706-506-1902
calvertgroup@kw.com
@CalvertGroupGA
www.calvertrealtyga.com

 NORTHWEST
KELLERWILLIAMS REALTY



Lisa Simpson
REALTOR® | MULTI MILLION DOLLAR PRODUCER
cell: 404-428-7963
office: 678-631-1700
Lisa@iheartatlanta.com
Follow us on Instagram
@iheartatlantarealty
IHEART ATLANTA
The Simpson Team
kw SIGNATURE PARTNERS

Copyright © 2003-2021. All rights reserved.